

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Tom L. Beauchamp
Secretary of State
Austin, Texas

Dear Sir:            Attention:  Mr. Ennis C. Favors
                     Attorney, Franchise Tax Division

                     Opinion No. O-1331
                     Re: Should the Secretary of State
                         collect a franchise tax from
                         motor bus and motor truck cor-
                         porations operating over fixed
                         lines and at fixed schedules
                         under the terms and provisions
                         of Article 7084 (A), R. C. S.,
                         or under the terms and provi-
                         sions of Article 7084 (D),
                         R. C. S.?

         We are in receipt of your letter of Septem-
ber 26, 1939, which reads in part as follows:

         "We have a number of motor bus and
motor freight truck corporations operat-
ing in Texas over fixed lines and at
fixed schedules. Some of these corpora-
tions file their franchise tax returns
as a public utility corporation, under
the provisions of Article 7084d thereby
avoiding the payment of any tax upon their
notes, bonds and debentures maturing one
year or more from date of issue, others
file their franchise tax under the terms
and provisions of Article 7084a, R. C. S.,
thereby paying taxes on their notes, bonds
and debentures maturing one year or more
from date of issue. We will appreciate
your opinion on the following question:

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable Tom L. Beauchamp, page 2

> "Should the Secretary of
> State collect a franchise tax
> from these motor bus and motor
> truck corporations operating
> over fixed lines and at fixed
> schedules under the terms and
> provisions of Article 7084a,
> R. C. S., or under the terms
> and provisions of Article 7084d,
> R. C. S.?"

As we understand your question, you refer
to those motor bus and truck corporations operating
under certificates of public convenience and neces-
sity issued by the Railroad Commission of Texas, and
which are ordinarily designated as "common carriers."

Article 7084 (A) is the general franchise
tax statute which applies to "every domestic and for-
eign corporation heretofore or hereafter chartered or
authorized to do business in Texas." Subdivision (D)
of Article 7084 removes certain corporations from the
operation of Section (A), and the tax is computed up-
on a different basis. Subdivision (D) reads in part
as follows:

> "(D) Except as provided in preced-
> ing Clauses (B) and (C) all public utility
> corporations, which shall include every
> such corporation engaged solely in the busi-
> ness of a public utility whose rates or
> service is regulated, or subject to regula-
> tion in whole or in part, by law, shall pay
> a franchise tax as provided in this Act.
> * * *"

In construing this statute, the Austin Court
of Civil Appeals stated in Gulf States Utilities Company
v. State, 46 S. W. (2d) 1018:

> "* * * Under the language of sub-
> division (D) only 'public utility cor-
> porations, which shall include every
> such corporation engaged solely in the

Honorable Tom L. Beauchamp, page 3

business of a public utility whose rates
or service is regulated, or subject to reg-
ulation, in whole or in part, by law,' are
included.  It is manifest from this language
that the Legislature did not intend to in-
clude within the statute any corporation
which it had not theretofore, or might there-
after, declare to be 'by law' a public utility
corporation or business.  The phrase 'every
such corporation' is necessarily limited to
'all public utility corporations' declared
to be such 'by law,' which means, as applied
here, by a legislative enactment.  If the
language may be regarded as of doubtful
meaning in this regard, then we think that
such construction is manifestly the inten-
tion of the Legislature from its long-con-
tinued policy of enacting from time to time
declaratory statutes, declaring businesses
or enterprises to be public utilities, or
to be affected with the public interest, and
in subjecting them to some sort of public
regulation or control. * * *"

A public utility has been described as a busi-
ness organization, which regularly supplies the public
with some commodity or service, as electricity, gas,
water, transportation, telephone or telegraph service.
While the term has not been exactly defined, and it
would be difficult to construct a definition that would
fit every conceivable case, the distinguishing charac-
teristic of a public utility is the devotion of private
property by the owner or person in control thereof, to
such a use that the public generally has the right to
demand that the use or service shall be conducted with
reasonable efficiency and under proper charges. 51 C.
J. 4; 44 Tex. Juris. 702.

With reference to the motor bus companies de-
scribed in your letter of request, the Legislature
has made numerous regulations in what is now designated
as Article 911a, Vernon's Texas Civil Statutes, being
Acts of 1927, 40th Legislature, Chapter 270, as amended
Acts of 1929, 41st Legislature, First Called Session,

Honorable Tom L. Beauchamp, page 4

Chapter 78. It is provided in Section 2 of said Act that:

"All motor bus companies as defined herein are hereby declared to be 'common carriers' and subject to regulation by the State of Texas, and shall not operate any motor propelled passenger vehicle for the regular transportation of persons as passengers for compensation or hire over any public highway of this state, except in accordance with the provisions of this Act * * *."

Section 3 makes it the duty of the Railroad Commission to issue certificates of public convenience and necessity, pursuant to a finding that public convenience and necessity required the issuance of such certificate and that its issuance will promote the public welfare.

Section 4 makes it the duty of the Railroad Commission to supervise and regulate the public service rendered by every motor bus company operating over the highways over this state, fix fares, rates or charges, prescribe rules and regulations, prescribe routes, schedules, service and safety operations.

Throughout the Act various and detailed regulations are imposed upon such motor bus companies, which we do not deem necessary to set out at length.

Acts 1929, 41st Legislature, Chapter 314, as amended by Acts 1931, 42nd Legislature, Chapter 277, appearing as Article 911b, Vernon's Texas Civil Statutes, 1925, subjects the motor carriers described in your letter of request to regulation and places them under the supervision and jurisdiction of the Railroad Commission of Texas. Section 22b of such Act provides in part as follows:

"The business of operating as a motor carrier of property for hire along the highways of this State, is declared to be a business affected with the public interest.* * *"

Honorable Tom L. Beauchamp, page 5

Section 3 provides that no "motor carrier shall, after this Act goes into effect, operate as a common carrier without first having obtained from the Commission, under the provisions of this Act, a certificate of public convenience and necessity pursuant to a finding to the effect that the public convenience and necessity require such operation. * * *"

Section 4 makes it the duty of the Railroad Commission to supervise and regulate such carriers and to fix, prescribe or approve rates, fares and charges, to prescribe rules and regulations, require reports, prescribe schedules and services and to supervise and regulate motor carriers in all matters affecting the relation between such carriers and the shipping public, whether therein specifically mentioned or not. The Act then proceeds to prescribe regulations and define the duties of the Commission in greater detail.

The whole tenor of the Acts mentioned above indicates that the welfare of the public is a matter of first consideration, and that the Railroad Commission should fully consider the need and effective service rendered to the public. Texas Motor Coaches v. Railroad Commission (T. C. A., 1931), 41 S. W. (2d) 1074.

In Producers Transportation Company v. Railroad Commission of the State of California (1920), 251 U. S. 228, 40 Sup. Ct., 131, it was stated:

"It is, of course, true that if the pipe line was constructed solely to carry oil for particular producers under strictly private contracts and never was devoted by its owner to public use, that is, to carrying for the public, the State could not by mere legislative fiat or by any regulating order of a commission convert it into a public utility or make its owner a common carrier; for that would be taking private property for public use without just compensation, which no state can do consistently with the due process of law clause

Honorable Tom L. Beauchamp, page 6

of the Fourteenth Amendment. * * * On the
other hand, if in the beginning or during
its subsequent operation the pipe line was
devoted by its owner to public use, and if
the right thus extended to the public has
not been withdrawn, there can be no doubt
that the pipe line is a public utility, and
its owner a common carrier whose rates and
practices are subject to public regulation."

See also Michigan Public Utilities Commission v. Duke,
266 U. S. 570, 45 Sup. Ct. 191, wherein motor carriers
were under consideration.

We also call attention to West Suburban Trans-
portation Company v. Chicago and West Town Railway Com-
pany, 140 N. E. 56:

"It is not the policy of the Public
Utilities Act to promote competition be-
tween common carriers as a means of pro-
viding service to the public. The policy
established by that Act is that, through
regulation of an established carrier oc-
cupying a given field and protecting it from
competition, it may be able to serve the pub-
lic more efficiently and at a more reasonable
rate than would be the case if other compet-
ing lines were authorized to serve the pub-
lic in the same territory. Methods for the
transportation of persons are established
and operated by private capital as an invest-
ment, but as they are public utilities, the
State has the right to regulate them and
their charges, so long as such regulation
is reasonable."

It is our opinion that corporations engaged solely
in the business of operating common carrier motor buses and
motor trucks in transporting persons or property should pay
a corporate franchise tax under the terms and provisions

Honorable Tom L. Beauchamp, page 7

of Article 7084 (D), Revised Civil Statutes, 1925, as amended.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By      *Cecil C. Cammack*

Cecil C. Cammack
Assistant

CCC:LF

APPROVED NOV 1, 1939

*Gerald C. Mann*

ATTORNEY GENERAL OF TEXAS



APPROVED
OPINION
COMMITTEE